UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

CARMEN COLON,

                          **MEMORANDUM AND ORDER**

          Plaintiff,               20-cv-2113(KAM)

       v.

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

---------------------------------X
KIYO A. MATSUMOTO, United States District Judge:

      Pursuant to 42 U.S.C. § 405(g), plaintiff Carmen Colon appeals the final decision of the defendant Commissioner of Social Security (the "Commissioner"), which found that plaintiff was not eligible for disability insurance benefits under Title II of the Social Security Act ("the Act"), on the basis that plaintiff is not disabled within the meaning of the Act. Plaintiff alleges that she is disabled under the Act and is thus entitled to receive the aforementioned benefits.

      Presently before the court are plaintiff's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 11, "Pl. Mot."), defendant's cross-motion for judgment on the pleadings (ECF. No. 12, "Def. Cross-Mot."), and plaintiff's reply to defendant's cross-motion (ECF. No. 13, "Pl. Reply"). For the reasons stated herein, plaintiff's motion is GRANTED, defendant's cross-motion is

DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.

<u>**BACKGROUND**</u>

The parties have submitted a joint stipulation of relevant facts, and the court hereby incorporates it by reference. (*See* ECF No. 14, Joint Stipulation of Facts ("Joint Stip.").) Having reviewed the joint stipulation of facts, the ALJ's decision, and the administrative record, the court notes the following:

On November 30, 2016, plaintiff Carmen Colon filed an application for disability insurance benefits ("DIB") due to neck injury, back injury, bilateral carpal tunnel syndrome, right hip pain, asthma, bilateral leg numbness, and depression. (ECF No. 15, Administrative Transcript ("Tr.") 15, 170-173, 189.) The alleged onset of plaintiff's disability was November 5, 2015. (*Id.* at 15.) Plaintiff claims she was disabled after sustaining a work-related injury which affected her neck, lower back, and right knee while delivering a stove on February 27, 2014. (Joint Stip. at 2.)

On March 30, 2017, the Social Security Administration ("SSA") denied plaintiff's request for DIB, concluding that plaintiff's condition, although resulting in some limitations, was not severe enough to keep her from working. (*Id.* at 88, 100-101.) On April 12, 2017, plaintiff filed a request for a

hearing before an Administrative Law Judge ("ALJ"), which was held before ALJ Michelle I. Allen on December 12, 2018 in Jamaica, New York. (*Id.* at 15, 55-87.) David A. Festa, a vocational expert, also provided testimony during plaintiff's hearing. (*Id.*) In a written decision dated January 16, 2019, the ALJ found plaintiff was not disabled as defined under the Act. (*Id.* at 15-31.) On March 15, 2019, plaintiff sought review of the ALJ's decision with the Appeals Council, which was denied on April 15, 2020, thereby making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-6, 166-169.) On May 8, 2020, plaintiff filed the instant action in federal court appealing the Commissioner's final decision. (*See* ECF No. 1, Complaint.)

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the

decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error.  *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008).  "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion."  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C. § 405(g).  Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'"  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a),(d). A claimant is disabled under the Act when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . .; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the
> claimant is not working, (2) that he has a
> 'severe impairment,' (3) that the impairment
> is not one [listed in Appendix 1 of the
> regulations] that conclusively requires a
> determination of disability, and (4) that the
> claimant is not capable of continuing in his
> prior type of work, the Commissioner must find
> him disabled if (5) there is not another type
> of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation
omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must
consider whether "the combined effect of any such impairment
. . . would be of sufficient severity to establish eligibility
for Social Security benefits." 20 C.F.R. § 404.1523. Further,
if the Commissioner does find a combination of impairments, the
combined impact of the impairments, including those that are not
severe (as defined by the regulations), will be considered in
the determination process. 20 C.F.R. § 416.945(a)(2). In steps
one through four of the sequential five-step framework, the
claimant bears the "general burden of proving . . . disability."
*Burgess*, 537 F.3d at 128. At step five, the burden shifts from
the claimant to the Commissioner, requiring that the
Commissioner show that, in light of the claimant's RFC, age,
education, and work experience, the claimant is "able to engage
in gainful employment within the national economy." *Sobolewski
v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. If the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," however, the court may reverse and remand solely for the calculation and payment of benefits. *See, e.g.*, *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## DISCUSSION

### I.   The ALJ's Disability Determination

Applying the five-step sequential analysis, the ALJ determined at step one that plaintiff had not engaged in

substantial gainful activity since the alleged onset data of
November 5, 2015.  (Tr. at 17.)  At step two, the ALJ determined
that plaintiff suffered from the severe impairments of herniated
discs of the cervical spine, lumbar radiculopathy, bilateral
carpal tunnel syndrome, right hip osteoarthritis, asthma,
depression, and substance abuse disorder in remission.
(*Id.*)

At step three, the ALJ determined that plaintiff does
not have an impairment or combination of impairments that meets
or medically equals the severity of one of the listed
impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R.
§ 404.1520(d), § 404.1525, and § 404.1526), including major
dysfunction of a joint characterized by gross anatomical
deformity under Listing 1.02, disorders of the spine under
Listing 1.04, and depressive, bipolar, and related disorders
under 12.04.  (*Id.* at 18.)

At step four, the ALJ determined that plaintiff had
the residual functional capacity ("RFC") to perform "sedentary
work" as defined in 20 C.F.R. § 404.1567(a).  (*Id.* at 19.)  The
ALJ found that plaintiff can frequently reach overhead and in
all other directions with both upper extremities; she can handle
and finger items frequently with both hands and can climb ramps
and stairs occasionally.  (*Id.*)  Further, the ALJ found that
plaintiff can never climb ladders, ropes, or scaffolds; she can

balance frequently with a cane, and stoop and crouch
occasionally. (*Id.*) The ALJ found that plaintiff can never
kneel or crawl, can never work at unprotected heights, near
moving mechanical parts, and can never operate a motor vehicle.
(*Id.*) Finally, the ALJ found plaintiff can never work in
humidity, wetness, dust, odors, fumes and pulmonary irritants,
extreme cold, or extreme heat, but is able to perform simple,
routine tasks and is able to frequently interact with
supervisors, coworkers, and the public while being absent from
work one day a month. (*Id.*)

In making the RFC determination, the ALJ gave "little
weight" to the opinion of plaintiff's daughter, "as she is not
an acceptable medical source." (*Id.* at 25.) The ALJ also gave
"little weight" to Dr. Demetrios Mikelis's and other treating
sources' progress notes that plaintiff was to refrain from any
activity that exacerbates symptoms such as lifting, carrying,
bending, twisting. (*Id.*) The ALJ explained that these opinions
were given "little weight" because they were "based on
subjective symptoms and not objective findings." (*Id.*)

The ALJ gave "some weight" to consultative examiner
Dr. Iqbal Teli's opinion. (*Id.* at 26.) The ALJ explained that
Dr. Teli's opinion was given "some weight" because of his status
as an acceptable examining medical source with knowledge of the
Social Security disability program but not "greater weight"

because Dr. Teli's opinion does not provide exertional limitations, which are consistent with the record, and there were few findings regarding the hands or neck after surgery, so limitations applicable to the cervical spine were not consistent with the record. (*Id.*) The ALJ also gave "some weight" to the opinion of psychiatric consultative examiner Dr. Clementina Porcelli, Ph.D. (*Id.* at 27.) The ALJ explained that Dr. Porcelli's opinion was given "some weight" because of her status as an acceptable examining medical source with knowledge of the Social Security disability program but not "greater weight" because the opinion is internally inconsistent, as the medical source statement only indicates mild limitations, but Dr. Porcelli stated that the claimant's psychiatric problems may significantly interfere with her ability to function on a daily basis. (*Id.*)

The ALJ gave "great but not controlling weight" to the opinion of Dr. Barry M. Katzman. (*Id.*) The ALJ noted Dr. Katzman's long treatment history of plaintiff but concluded his opinion was not consistent with the record, which revealed plaintiff's mild loss of range of motion, grossly normal sensation, and ability to care for herself. (*Id.*) The ALJ also gave Dr. Sebastian Latugga's opinion "great but not controlling weight." (*Id.* at 28.) The ALJ noted Dr. Latugga's long treatment history of plaintiff but concluded his opinion was not

consistent with the record concerning occasional reaching as there was "little treatment to the neck and no treatment to the arms."  (*Id.*)  With respect to Dr. Lattuga's opinion the ALJ also found that "the need for an assistive device to ambulate is inconsistent with the claimant's testimony that she does not need the cane at home", "the record indicates that the claimant has a normal gait and strength in the lower extremities" because she takes public transportation, can climb stairs, and on a neurological exam on October 19, 2016 had "normal coordination", and Dr. Lattuga's conclusion that plaintiff would be absent three or more times a month was "speculative and not consistent with the record."  (*Id.*)  The ALJ also noted that Dr. Lattuga stated plaintiff's limitations began on February 27, 2014, which preceded the alleged onset date.  (*Id.*)

The ALJ gave "no weight" to the opinion of Dr. Gautman Khakhar's progress notes, which stated the plaintiff is totally disabled or has a 100% disability percentage.  (*Id.*)  The ALJ explained that this opinion was vague in that it did not provide specific limitations and is on an issue reserved to the Commissioner.  (*Id.*)

The ALJ gave "little weight" to the opinions of independent medical examiners Dr. Howard Levin and Dr. Eduardo Alvarez, noting that they are insurance company medical consultants who rely on state Worker's Compensation rules on

disability, which differ from rules that are applicable in Social Security disability cases. (*Id.* at 28-29.) The ALJ also noted that opinions on disability are reserved to the Commissioner. (*Id* at 29.) The ALJ concluded that plaintiff was unable to perform any past relevant work (*Id.*)

Lastly, at step five, the ALJ determined that plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including as an addresser, surveillance system monitor, and order clerk. (*Id.* at 30-31.) Thus, the ALJ concluded that per 20 CFR § 404.1520(g) plaintiff had not been under a disability as defined in the Social Security Act from November 5, 2016 through the date of the decision. (*Id.*)

## II. Analysis

On appeal, plaintiff asserts that the ALJ: (1) committed legal error when evaluating Listing 1.04(A) at step three and (2) improperly weighed medical evidence by failing to follow the treating physician rule. (ECF No. 11, Pl. Mot. at 1.) For the reasons discussed below, the court concludes the ALJ failed to provide adequate analysis at step three of the sequential analysis to support the ALJ's finding that plaintiff's medical evidence did not meet or equal Listing 1.04(A) and also failed to explain why the plaintiff's treating physicians' opinions were not accorded controlling weight.

Therefore, the court remands the case for further administrative proceedings consistent with this Memorandum & Order.  Because the court remands this case for additional findings at step three and the ALJ's explanation of the weight given to the treating physicians, the court declines to address plaintiff's remaining contentions on appeal.

### A. The Listings Requirements

The ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 1.04(A).  (Tr. at 18.)  "The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability."  *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).  "The regulations also provide for a finding of such a disability per se if an individual has an impairment that is 'equal to' a listed impairment."  *Id.* (citing 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which ... is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience." (internal quotation marks omitted))); *see also* 20 C.F.R. § 416.920(d).

At step three the claimant bears the "general burden of proving . . . disability."  *Burgess*, 537 F.3d at 128; *see*

*Sullivan v. Zebley,* 493 U.S. 521, 531 (1990); *Johnson v. Colvin*, No. 13-cv-1055 (JTC), 2014 WL 6883606, at *5 (W.D.N.Y. Dec. 4, 2014); *Naegele v. Barnhart,* 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

Nevertheless, courts have required an ALJ to provide an explanation as to why the claimant failed to meet or equal the Listings "[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (*quoting Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 52 (W.D.N.Y. 2002)). "While the ALJ may ultimately find that [a considered listing] do[es] not apply to Plaintiff, [s/he] must still provide some analysis of Plaintiff's symptoms and medical evidence in the context of the Listing criteria." *Critoph v. Berryhill*, No. 16-cv-00417 (MAT), 2017 WL 4324688, at *3 (W.D.N.Y. Sept. 28, 2017) (quoting *Peach v. Colvin*, No. 15-cv-104S, 2016 WL 2956230, at *4 (W.D.N.Y. May 23, 2016)). In other words, the ALJ must "build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012).

When an ALJ fails to provide an explanation where plaintiff's symptoms appear to meet a listing, to build a bridge

from the record evidence to the ALJ's conclusion, or to analyze plaintiff's symptoms and evidence in context of a listing's requirements, remand may be warranted. *See, e.g., Guevara v. Comm'r of Soc. Sec.*, No. 19-cv-601S, 2020 WL 5628063, at *4 (W.D.N.Y. Sept. 21, 2020) (remanding where the "ALJ failed to make or explain specific findings regarding Listing 1.04(A)"); *Torres v. Colvin*, No. 14-cv-479S, 2015 WL 4604000, at *4 (W.D.N.Y. July 30, 2015) (remanding where "the record evidence suggests that Plaintiff's symptoms could meet the Listing requirements in 1.04(A)" but the ALJ's "only reference to it is a recitation of the standard"); *Cherico v. Colvin*, No. 12-cv-5734 (MHD), 2014 WL 3939036, at *28 (S.D.N.Y. Aug. 7, 2014) (holding that an ALJ merely stating that he or she had considered the requirements of a listing was "patently inadequate to substitute for specific findings in view of the fact that plaintiff has at least a colorable case for application of listing 1.04(A)" and that where there is record support for each of the necessary symptoms, the ALJ was required to address that evidence, and his failure to specifically do so was error that would justify a remand); *Ortiz v. Saul*, No. 19-cv-2316 (KAM), 2020 WL 7699304, at *8 (E.D.N.Y. Dec. 28, 2020) (remanding where "due to the absence of specific findings by the ALJ" regarding Listing 1.04(A) "th[e] court [wa]s unable to

meaningfully review the ALJ's determination at step three of the sequential analysis").

To meet Listing 1.04(A), disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) must result in compromise of a nerve root (including the cauda equina) or the spinal cord with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff alleges that she meets Listing 1.04(A) based on disorders in the lumbar and cervical spine. The lumbar disorder, involving the lower back, requires plaintiff to meet all five criteria included in the listing. *See id.* The cervical spine disorder, in this case cervical herniated discs, is an upper back and neck injury not requiring a positive straight leg raising test. *Id.* (" . . . if there is involvement of the lower back, positive straight-leg raising test.").

Here, plaintiff argues that her medical records contain "persuasive proof" that she has satisfied all the criteria necessary to meet Listing 1.04(A). (Pl. Mot. at 17.)

The ALJ acknowledged Plaintiff's diagnosis of lumbar radiculopathy and cervical herniated discs but determined the technical requirements of the listing were not met. (Tr. at 18; Pl. Mot. at 15; Def. Cross-Mot. at 4-5.)  On appeal, plaintiff identifies evidence indicating nerve compression, limitation of motion, motor loss accompanied by sensory or reflex loss, and positive straight leg raising tests.  (*See* Pl. Mot. at 16-17 (citing to Tr. 344-345, 370, 398-399, 429, 497-498, 522, 535, 726).)  Defendant responds that plaintiff fails to meet her burden to show her impairments meet or equal the technical requirements of Listing 1.04(A). (*See* Def. Cross-Mot. at 4-5.)

### B. Plaintiff Provides Evidence to Support a Colorable Finding of Disability under Listing 1.04(A)

Having reviewed the record and the ALJ's decision, the court finds that plaintiff carried her burden of providing evidence to support a colorable finding of disability under Listing 1.04(A).  *See Monsoori v. Comm'r of Soc. Sec.*, No. 17-cv-01161 (MAT), 2019 WL 2361486, at *6 (W.D.N.Y. June 4, 2019) (remanding case for clarification where "Plaintiff has made at least a colorable case that he meets the requirements of Listing 1.04(A)"); *Jan S. v. Comm'r of Soc. Sec.*, No. 19-cv-1674 (WBC), 2021 WL 1339455, at *5 (W.D.N.Y. Apr. 9, 2021) (same).  Although "it is not our function to determine *de novo* whether [plaintiff] is disabled," *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998)

(citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)), the
court concludes that there is sufficient evidence in the record
of a spinal disorder that may arguably meet the technical
requirements of Listing 1.04(A).

### 1. New York Spine Specialists LLP

After her work-related injury, plaintiff received
treatment at New York Spine Specialists from September 2014 to
September 2018.  (Joint Stip. at 5; Tr. 309-54, 573-674.)  On
April 9, 2015, Dr. Demetrios Mikelis, M.D., a doctor at New York
Spine Specialists, assessed plaintiff's restricted ranges of
motion, decreased motor strength, and altered sensation in the
cervical and lumbar spine.  (Tr. at 485.)  Dr. Mikelis noted
that plaintiff returned to work full duty on December 8, 2014
and on February 9, 2015 was promoted to supervisor, which did
not require any heavy lifting. (Joint. Stip. at 5; Tr. at 669.)
Dr. Mikelis wrote that plaintiff had elected to proceed with
chiropractic care and physical therapy.  (Tr. at 486.)

On April 21, 2015, plaintiff was seen by Dr. Andrew
Cordiale, D.O., another doctor at New York Spine Specialists.
(Tr. at 482-483.)  Dr. Cordiale noted the same symptoms as Dr.
Mikelis and wrote that plaintiff was now considering a surgical
intervention, advising a new MRI of the lumbar spine to follow
up with a surgeon.  (*Id.* at 483.)

On April 23, 2015, plaintiff was seen by orthopedic surgeon Sebastian Lattuga, M.D. who diagnosed herniated cervical intervertebral disc, cervical nerve root impingement, lumbar sprain and strain, and lumbar radiculopathy. (*See* Tr. at 480; *Norman v. Astrue*, 912 F. Supp. 2d 33, 78 (S.D.N.Y. 2012) (cervical and lumbar radiculopathy is evidence of nerve root compression). Dr. Lattuga advised plaintiff on surgical and non-surgical options and noted that plaintiff wished to proceed with surgery for an anterior cervical discectomy and fusion at level C4/5 of the spine. (*Id*.)

On May 7, 2015, Dr. Lattuga performed a cervical hemi vertebrectomy C5, cervical hemi vertebrectomy C6, anterior cervical diskectomy C5/6, intervertebral implant, arthrodesis C5/6, and anterior instrumentation C5/6. (Tr. at 474-477, 659-662.) Following surgery, on May 22 and June 22, 2015, Dr. Mikelis and Dr. Lattuga noted restricted range of motion as well as motor strength and sensation consistent with pre-operation symptoms (decreased). (*Id*. at 470, 472.) These symptoms were unchanged on July 15, September 18, September 21, October 12, November 4, and November 30, 2015. (*Id*. at 309-310, 311-312, 449-450, 456-457, 458-459, 462-463.) On November 30, 2015, Dr. Mikelis also conducted diagnostic imaging which showed residual and recurrent scar tissue, disc bulges, neuroforaminal narrowing, and spinal stenosis. (*Id* at 312.) Thereafter, On

February 1, February 29, and April 4, 2016, Dr. Mikelis'
diagnosis and conclusions of restricted range of motion,
decreased motor strength, and decreased sensation also did not
change.  (*Id*. at 313-318.)  On May 18, 2016, Dr. Lattuga
diagnosed cervical radiculopathy and herniated nucleus pulposus
("HNP"), as well as lumbar radiculopathy, HNP, instability, and
neurogenic claudication.  (*Id*. at 320.)

Dr. Lattuga performed a second back surgery on June
21, 2016, including a posterolateral fusion L4/L5, segmental
pedicle fixation L4/L5, lumbar laminectomy L4/L5, facetectomy,
foraminotomy, discectomy, morselized bone graft, BMP implant,
and neurolysis L4/L5.  (Tr. at 429-433.)  Dr. Lattuga
postoperatively diagnosed severe neural compression and
instability in addition to confirmation of the preoperative
diagnosis.  (Joint Stip. at 7; Tr. at 429, 614.)  Following this
surgery, plaintiff's diagnosis of both lumbar and cervical
radiculopathy as well as symptoms including decreased range of
motion, decreased motor strength, and reduced sensation were
confirmed on September 26, October 19, December 5, and February
20, 2016.  (Tr. at 327-330, 417-418, 524-525.)

On September 10, 2018, Dr. Mikelis diagnosed plaintiff
with cervical HNP, cervical nerve root lesion, lumbar
radiculopathy, and lumbar HNP; he additionally confirmed that
plaintiff's symptoms persisted.  (*Id*. at 574.)  On November 30,

2018, Dr. Lattuga completed a report for a "claim of disability due to spinal impairment," and opined that that due to plaintiff's spinal impairment, lumbar spine radiculopathy, herniated nucleus pulposus, lumbar sprain and strain, cervical herniated intervertebral disc, and cervical nerve root impingement, she suffered from various work-related limitations. (Joint Stip. at 7; Tr. at 725-730.)  Dr. Lattuga identified the following relevant positive clinical findings to support his diagnoses: positive straight leg raise, limited range of motion in the lumbar spine, limited range of motion in the cervical spine, sensory loss in right L4/L5, sensory loss in right C4, right C5, right C6, and altered dermatomes.  (Tr. at 726.)

In summary, plaintiff's medical records from New York Spine Specialists LLP indicate consistent evidence of nerve root compression characterized by neuro-anatomic distribution of pain (evinced through diagnoses of lumbar and cervical radiculopathy), limitation of motion of the spine, and motor loss accompanied by sensory loss between April 9, 2015 and November 30, 2018.  Additionally, Dr. Lattuga's report for "claim of disability due to spinal impairment" noted a positive straight leg raise test.  (*Id*. at 726.)

### 2. Dr. Eduardo Alvarez

On March 2, 2016, Dr. Eduardo Alvarez, M.D., noted in an independent orthopedic medical evaluation, plaintiff's

restricted range of motion in the cervical and lumbar spine, hypoesthesia, her ability to exert only up to 10 pounds of force in holding, lifting, and pulling with no repetitive bending, lifting, and twisting, and positive straight leg raising. (*Id.* at 370.) Dr. Alvarez concluded that plaintiff manifested a temporary, marked, orthopedic disability. (*Id.*)

On August 31, 2016, Dr. Alvarez conducted a second evaluation following plaintiff's back surgery by Dr. Lattuga, and confirmed pain and restricted range of motion in the cervical and lumbar spine, hypoesthesia over the thumb, index, and middle fingers of both hands, hypoesthesias in both lower extremities following no dermatomal pattern, and positive straight leg raising. (*Id.* at 375-376.) Dr. Alvarez concluded for a second time that plaintiff manifested a temporary, marked, ongoing, orthopedic disability at this time. (*Id.* at 377.)

### 3. Physical Medicine and Rehabilitation of New York

Between August 19, 2016 and May 4, 2017, Drs. Derek Johnson, M.D. and Gautam Khakar, M.D. at Physical Medicine and Rehabilitation of New York noted plaintiff's restricted range of motion in the lumbar spine, reduced motor strength, and diminished sensation in the bilateral hands and/or lower extremities. (*Id.* at 344-345, 398-399, 498, 522-523, 953-958.) On October 6 and December 1 of 2016 as well as January 19, March

16, and May 4 of 2017, Dr. Khakhar wrote that plaintiff was "totally disabled."  (Tr. At 345, 497-499, 522-523, 958, 955.)

In summary, as described above, after reviewing the administrative record, the court concludes that plaintiff carried her burden at step three by providing evidence to support a colorable finding of disability under Listing 1.04(A). *See Parks v. Comm'r of Soc. Sec.*, No. 19-cv-00505 (EAW), 2020 WL 3542123, at *6 (W.D.N.Y. June 30, 2020) ("Plaintiff has made at least a colorable case that [she] meets [or equals] the requirements of Listing 1.04(A) and thus, the ambiguities noted above are critical to a finding of disability.") (citing *Monsoori v. Comm'r of Soc. Sec.*, No. 17-cv-01161 (MAT), 2019 WL 2361486, at *6 (W.D.N.Y. June 4, 2019)).

"Because there is evidence that plaintiff's impairments meet each of the requirements for listing 1.04A, the ALJ must provide an explanation of his reasoning as to why he believes the requirements are not met and explain the credibility determinations and inferences he drew in reaching that conclusion."  *See Ryan v. Astrue*, 5 F. Supp. 3d 493, 509 (S.D.N.Y. 2014); *Norman v. Astrue*, 912 F. Supp. 2d 33, 80-81 (S.D.N.Y. 2012); *Rivera v. Astrue*, No. 10-cv-4324 (RJD), 2012 WL 3614323, at *11-12 (E.D.N.Y. Aug. 21, 2012).  Here, the court concludes that the ALJ inadequately explained her reasoning that the requirements under Listing 1.04(A) were unmet and,

therefore, remands this case for further proceedings consistent
with this Memorandum & Order.

### C. The ALJ's Analysis Was Inadequate, Warranting Remand

At step three, the ALJ, after reciting examples of
disorders of the spine under Listing 1.04, stated the following:
"the claimant has been diagnosed with lumbar radiculopathy and
cervical herniated discs but the technical requirements of the
listing are not satisfied." (Tr. at 18.) There was no further
mention of Listing 1.04(A), no discussion of the technical
requirements, and no analysis of plaintiff's medical records as
related to those requirements. The court finds that the ALJ's
conclusory statement is "patently inadequate to substitute for
specific findings in view of the fact that plaintiff has at
least a colorable case for application of listing 1.04(A)."
*Cherico v. Colvin*, No. 12-cv-5734 (MHD), 2014 WL 3939036, at *28
(S.D.N.Y. Aug. 7, 2014). Remand, therefore, is warranted. *See
Torres v. Colvin*, No. 14-cv-479S, 2015 WL 4604000, at *4
(W.D.N.Y. July 30, 2015) (remanding where the ALJ's "decision
lacks a meaningful discussion of Listing 1.04(A), which leaves
this Court unable to assess whether the ALJ's decision is
supported by substantial evidence"); *see also Rowe v. Berryhill*,
No. 17-cv-00208 (MAT), 2018 WL 4233702, at *3 (W.D.N.Y. Sept. 6,
2018) (remanding where the ALJ did not discuss at step three the
evidence suggesting the requirements of Listing 1.04(A) were

met); *McIntosh v. Berryhill*, No. 17-cv-5403 (ER)(DF), 2018 WL 4376417, at *18 (S.D.N.Y. July 16, 2018) (remanding where "conflicting medical evidence left unaddressed by the ALJ, combined with significant omissions in Plaintiff's medical records, render this Court unable to conclude that the ALJ's ultimate decision that Plaintiff failed to satisfy Listing 1.04(A) was supported by substantial evidence), *report and recommendation adopted*, No. 17-cv-5403 (ER)(DF), 2018 WL 4374001 (S.D.N.Y. Sept. 12, 2018).

On appeal, the Commissioner's attorneys combed the record for examination findings "at odds with the strict requirements for disability under Listing 1.04(A)" to show why plaintiff did not meet satisfy the Listing 1.04(A) criteria. (Def. Cross-Mot. at 7.)  The ALJ's decision, however, made no such effort, and "the ALJ (not the Commissioner's lawyers) must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'"  *Hamedallah ex rel. E.B.*, 876 F. Supp. 2d at 142.  Because the ALJ's decision did not provide specific analysis of the requirements of Listing 1.04(A), this court is unable to meaningfully review the ALJ's step three analysis.  *See id.* at 144 (remanding where "the ALJ provided a one-sentence, conclusory analysis without any recitation of the facts or medical evidence"); *Proper v. Comm'r of Soc. Sec.*, No. 12-cv-0098 (MAT), 2014 WL 7271650, at *11

(W.D.N.Y. Dec. 18, 2014) (remanding where "with regard to Listing 1.04, the ALJ did not analyze, much less mention, any of the relevant medical evidence regarding Plaintiff's diagnoses"); *Giambrone v. Colvin*, No. 15-cv-05882 (PKC), 2017 WL 1194650, at *18 (E.D.N.Y. Apr. 3, 2017) (remanding where "the ALJ merely stated that "the record does not document the required symptoms necessary to meet the requirements").

Notwithstanding an unexplained rationale at step three of the sequential analysis, the ALJ's conclusion may be upheld so long as the court is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (summary order) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)). Although the ALJ recited some of plaintiff's medical history, her analysis was explicitly confined to her RFC determination: "the issue before the undersigned is what is the most that the claimant can do given her severe impairments." (Tr. at 29.) In other words, the ALJ's analysis addressed only the RFC determination and did not provide any rationale as to how the ALJ reconciled the record evidence relevant to the specific criteria in Listing 1.04(A). (*Id.* at 19-29.) Additionally, the ALJ's RFC summary specifically acknowledged plaintiff's "severe impairments"

including lumbar radiculopathy and cervical herniated discs. (*Id.*)  Elsewhere in her RFC finding, the ALJ even cites evidence which suggests some technical requirements in Listing 1.04(A) may have been satisfied.  (*Id*. at 21-23.)  To the extent the ALJ may have recited, but never explained in relation to Listing 1.04(A), potentially contradictory evidence, "mere recitation of the medical evidence is insufficient unless the reports referred to contain substantiated conclusions concerning the Listings, and the ALJ expressly adopts the reasoning of those conclusions."  *Kovacevic v. Chater*, No. 94-cv-600S, 1995 WL 866425, at *8 (W.D.N.Y. Sept. 28, 1995) (citing *Booker v. Heckler,* 1984 WL 622, at *3 (S.D.N.Y. 1984)).

For these reasons, the court concludes that remand is appropriate for clarification of the ALJ's step three analysis regarding Listing 1.04(A).  *See Ortiz*, 2020 WL 7699304, at *8 ("Where evidence in the record suggests that a plaintiff could meet criteria of Listing 104(A), remand is proper when the court cannot determine whether the ALJ properly considered the Listing because his only reference to it is a recitation of the standard." (internal quotation marks omitted)); *see, e.g.*, *Lamar v. Berryhill*, No. 17-cv-1019 (MPS), 2018 WL 3642656, at *8 (D. Conn. Aug. 1, 2018) (remanding where the court was "largely left to speculate how the evidence discussed in the ALJ's RFC rationale applies in the Listings context, as the ALJ did not

make the necessary findings on issues pertinent to his determinations at step three of the disability"); *White-Swanson v. Colvin*, No. 14-cv-01070 (MAD), 2016 WL 917945, at *4 (N.D.N.Y. Mar. 10, 2016) (remanding where "the Court is left to guess at the reasoning behind the ALJ's conclusions that Plaintiff does not meet the listed impairments"); *Norman v. Astrue*, 912 F. Supp. 2d 33, 81 (S.D.N.Y. 2012) (remanding where "as a result of the medical evidence discussed above, and in conjunction with the ALJ's failure to address the potential applicability of Listing 1.04A, I cannot conclude that there is 'sufficient uncontradicted evidence in the record to provide substantial evidence for the conclusion that [p]laintiff failed to meet step three.'" (citing *Sava v. Astrue*, No. 06-cv-3386 (KMK)(GAY), 2010 WL 3219311, at *4 (S.D.N.Y. Aug. 12, 2010))).

On remand, the ALJ should specifically explain her findings regarding the technical requirements in Listing 1.04(A). "Plaintiff is clearly owed a more substantive explanation of why he did not meet the Listing 1.04A. If, on remand, Plaintiff is once again found not disabled at step three, the ALJ must provide an explanation of what criteria from Listing 1.04A Plaintiff failed to meet in consideration of all of the evidence regarding his severe impairments of the cervical spine. Specifically, the ALJ is directed to address all conflicting evidence and provide reasons for discounting that

evidence which he rejects." *Nashir v. Berryhill*, No. 18-cv-767 (HKS), 2020 WL 1445069, at *5 (W.D.N.Y. Mar. 25, 2020).

### D. Plaintiff's Remaining Arguments

Plaintiff also argues that the ALJ improperly weighed medical evidence by failing to follow the treating physician rule. Though the ALJ's inadequate analysis at step three is a sufficient basis for remand for further proceedings, this court also directs the ALJ to apply and explain her treating physician analysis.

Under the treating physician rule[1], a "treating source's opinion on the issue of the nature and severity of a [claimant's] impairment(s) will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess*, 537 F.3d at 128); 20 C.F.R. §§ 404.1527(c)(2); *see Molina v. Colvin*, No. 13-cv-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug. 7, 2014) (finding the opinion of a treating physician "need not be given controlling weight where [it is] contradicted by other substantial evidence in the record.").

---

[1] Plaintiff's application for disability and disability insurance benefits was filed on November 30, 2016. Therefore, the recent changes reflected in C.F.R. § 404.1520(c) for applications on or after March 27, 2017 do not apply, and under C.F.R. § 404.1527(a)(2)(c), the treating source's opinion is generally assigned added or possibly controlling weight.

If an ALJ does not give controlling weight to the treating physician's medical opinion, the ALJ must consider various factors to determine how much weight, if any, to give to the opinion, including: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)); *see* 20 C.F.R. § 404.1527(c)(2); *see also Adukpo v. Berryhill,* 19-cv-2709 (BMC) 2020 WL 3410333, at *1 (E.D.N.Y. Jun. 22, 2020).

"The ALJ must then 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Cichocki v. Astrue*, 534 Fed. App'x 71, 74 (2d Cir. 2013) (summary order) (quoting *Burgess*, 537 F.3d at 129). The ALJ must also set forth "good reasons" for not fully crediting the opinion of the treating physician. *Cervini v. Saul,* 17-cv-2128 (JMA) 2020 WL 2615929 at *5 (E.D.N.Y. May 21, 2020) (citing *Schaal*, 134 F.3d 496, 503 (2d Cir. 1998)). Failing to provide good reasons for declining to apply the treating physician rule warrants remand. *See Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998) (remanding where the Commissioner did not provide good reasons for discrediting the treating physician's

opinion.); *see also Burgess*, 537 F.3d at 129-30 (remanding after concluding that "failure to provide such "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)); *Greek*, 802 F.3d at 375 (remanding where the ALJ did not offer good reasons for why he discredited the opinion of the treating physician). On remand, the ALJ should consider and apply the treating physician rule or explain her rationale for declining to do so with good reasons, as explained above.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for judgment on the pleadings is GRANTED, defendant's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment in favor of plaintiff and close the case.

**SO ORDERED.**


                                        /s/
                                        Hon. Kiyo A. Matsumoto
                                        United States District Judge
                                        Eastern District of New York


Dated:     Brooklyn, New York
           July 7, 2021